OPINION
{¶ 1} Edward J. Takacs appeals from the judgment of the Lake County Court of Common Pleas, finding him guilty of felonious assault based on a jury verdict. We affirm.
 {¶ 2} During the evening of August 29, 2003, sixteen-year old Robbie Hayward went with his best friend, Tim Carroll, and Carroll's girlfriend, Heather Springer, to a restaurant named Annabelle's in Mentor, Lake County, Ohio. The record indicates that Annabelle's is a popular "hangout" for local teenagers, where large crowds of youths gather in the street, and the boys stage street fights. Mr. Hayward and his friends were there for such an edifying event.
 {¶ 3} Also in attendance were two girls, Jamie Townson and Jessica Buckels, evidently loose acquaintances of Mr. Hayward's. They seem to have attached themselves to Hayward's group.
 {¶ 4} At some point, the evening's main event, a brawl between two unnamed boys, broke out in the street near Annabelle's, between a post office and a Best Supply. Hayward's group was milling about on the post office side of the street. According to him, at some point an unknown assailant ran from behind, and struck him across the face with a heavy object, and ran away. Mr. Hayward could not identify the perpetrator. On direct examination, he testified that Mr. Carroll and Miss Springer were some ten feet away from him at the time of the assault. On cross-examination, he indicated he was standing in the middle of a group containing Mr. Carroll and Miss Springer, as well as Miss Townson and Miss Buckels. Bleeding profusely from the nose, Mr. Hayward claims to have returned to his car with Mr. Carroll and Miss Springer, and driven home. He testified that he asked them the identity of his assailant, and that they could not give him a name.
 {¶ 5} Upon returning to her home from work in the wee hours of August 30, 2003, Mr. Hayward's mother, Marie, found him in his room with an icepack on his face. She took him to the hospital, where it was determined that he had a broken nose and orbital. The nose required re-setting.
 {¶ 6} Mr. Carroll testified that he was fifteen to twenty feet away from Mr. Hayward when the assault occurred, and that no one was within five feet of Mr. Hayward. He testified that the assailant ran up behind Mr. Hayward, hit him across the face with an object like a bat or pipe, and ran away. He testified that he, Miss Springer, and Mr. Hayward drove to a gas station for the latter to clean up, then went to Hayward's home. He testified that he encountered Mr. Takacs the following day, August 30, 2003, in a mall parking lot, and recognized him as the man who assaulted Mr. Hayward. He claimed that Mr. Takacs wanted to fight him in the mall parking lot.
 {¶ 7} Mr. Carroll further testified that he reported the assault on Hayward to Patrolman Fiorelli of the Mentor police on August 30, 2003, at the insistence of his mother, who spotted Patrolman Fiorelli doing paperwork in his car in the fire station parking lot next to the Carroll home. He admitted that he did not know the assailant's name, but could identify him, and told Patrolman Fiorelli that Miss Springer could also provide information.
 {¶ 8} Miss Springer testified that she was about ten feet away from Hayward at the time of the assault. She claimed Mr. Hayward did not ask the identity of his assailant on the drive home the evening of August 29, 2003. She was with Mr. Carroll the following day in the mall parking lot, when the run-in with Mr. Takacs occurred. She picked Mr. Takacs' photo from a photo array as the Hayward assailant.
 {¶ 9} Miss Buckels testified that she and Miss Townson were standing on each side of Mr. Hayward at the time of the assault. She testified she was three feet away from Mr. Hayward, and that the assailant stood on Hayward's other side before striking. Miss Buckels admitted that in her police statement she did not indicate Mr. Takacs was standing next to Mr. Hayward. She further admitted that in her police statement she did not give Mr. Takacs' name, though she knew it in full. Miss Buckels testified that she accompanied Mr. Hayward to his car after the assault, and followed him in a separate car.
 {¶ 10} Miss Townson testified that she was an arms' length from Mr. Hayward when the assault occurred, and that she observed Mr. Takacs approach Mr. Hayward from the side. She testified that her friend Becky Swanson drove Mr. Hayward to a gas station to clean up. She claimed to have learned Mr. Takacs' name from Miss Buckels.
 {¶ 11} Both Miss Buckels and Miss Townson admitted that they did not report the assault until the following evening, when they were attending another fight at Annabelle's, in which their friend Don Teeter was beaten up by Mr. Takacs. They informed Officer Collins of the Hayward assault when he was investigating the Takacs/Teeter brawl. Both Miss Buckels and Miss Townson picked Mr. Takacs' image from a photo array as the man who assaulted Mr. Hayward.
 {¶ 12} Lindsay Anderson is the little sister of Takacs' friend, Joe Anderson. She testified that she saw Mr. Takacs and her brother at the August 29, 2003 brawl, and that they were all on the Best Supply side of the street. She testified that she never saw Mr. Takacs attack anyone that evening.
 {¶ 13} Christina Ritchey is Joe Anderson's girlfriend. She testified that she was also standing on the Best Supply side of the street on the evening of August 29, 2003; that she saw Mr. Takacs at the fight; and, that she never saw him attack anyone.
 {¶ 14} Following police investigation the Lake County grand jury indicted Mr. Takacs on two counts of felonious assault in relation to the Hayward assault. The first was for violation of R.C. 2903.11(A)(2) — causing or attempting physical harm to another with a deadly weapon; the second for violation of R.C. 2903.11(A)(1) — causing serious physical harm to another. Each is a second-degree felony. Jury trial was held June 1 and 2, 2004, and the jury returned a verdict of not guilty on the first count, and guilty on the second. The trial court sentenced Mr. Takacs to seven years' imprisonment by a judgment entry filed August 4, 2004. Mr. Takacs filed a pro se motion for leave to pursue a delayed appeal October 18, 2005, which we granted February 22, 2006. He makes one assignment of error:
 {¶ 15} "The jury's verdict finding the appellant guilty of Felonious Assault was against the manifest weight of the evidence."
 {¶ 16} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 17} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to "the weight to be given the evidence and the credibility of the witnesses." State v. DeHass (1967),10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 18} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 19} Application of these standards to Mr. Takacs' case shows his assignment of error must fail. He makes two arguments in support of it. First, he points to the considerable factual discrepancies in the accounts of the assault and its aftermath given by the state's principle witnesses, Mr. Carroll, and Mlles. Springer, Buckels, and Townson, and argues that these discrepancies cause the testimony of each to cancel that of the others.
 {¶ 20} This fails as a matter of logic. We do not know which of these witnesses, or which portions of their testimony, the jury relied on in convicting Mr. Takacs. It could have been the testimony of one, or two, or any combination thereof. The argument also fails as a matter of experience. Different people notoriously have different recollections of events, particularly fast-paced ones. Each witness agreed the assault was a matter of seconds.
 {¶ 21} Second, Mr. Takacs proposes that each of these witnesses had a grudge against him: Mr. Carroll and Miss Springer for the mall parking lot encounter August 30, 2003; Mlles. Buckels and Townson for the beating he gave their friend Don Teeter at the August 30, 2003 Annabelle's slugfest. The jury was made aware that each of these witnesses had further, unpleasant contact with Mr. Takacs following the Hayward assault. It was their province, not ours, to factor this in arriving at a verdict.
 {¶ 22} The assignment of error is without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., CYNTHIA WESTCOTT RICE, J., concur.